**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JIMI ROSE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:20-cv-06334 |
| | : | |
| MATTRESS FIRM, INC. and | : | |
| JOHN ECK, | : | |
| | : | |
| Defendants. | : | |

**O P I N I O N**

**Defendants' Motion to Dismiss Plaintiff's Complaint and to Strike Certain Language from the Complaint, ECF No. 6—GRANTED**

**Joseph F. Leeson, Jr.**                                              **February 23, 2021**
**United States District Judge**

## I.    INTRODUCTION

*Pro se* Plaintiff Jimi Rose commenced this action in the Lehigh County Court of Common Pleas against Mattress Firm, Inc., and its CEO, John Eck.  Rose's claims, while difficult to discern, stem from alleged defects in a mattress that was purchased from Mattress Firm, Inc. for him as a gift by friends.  Defendants removed the case to this Court on grounds of diversity jurisdiction, and now move to dismiss the Complaint.  They also move to strike certain passages from the Complaint as immaterial, impertinent, and scandalous.  For the reasons set forth below, Defendants' motion to dismiss, as well as their motion to strike, are granted.  Rose's Complaint is dismissed with prejudice.

## II.    BACKGROUND

### A.    Facts Alleged in the Complaint[1]

The Court takes the following allegations verbatim from Rose's Complaint.  The Court declines to credit by way of reproduction those portions of Rose's Complaint that contain impertinent, scandalous, and patently inappropriate assertions directed at Defendants—of which there are several.   With those omissions, Rose avers as follows:

1. On or around the 11th day of July, 2020 Plaintiff's friends purchased a mattress and a base from Mattress Firm as a gift to the Plaintiff.

2. Several days later, the delivery men delivered what was supposed to be an extra firm mattress and an electronic base. When the gentlemen who brought the mattress to the Plaintiff's home looked like they were very unclean people.

3. Plaintiff does not know the exact date the mattress was delivered but, approximately a week and a half after the Plaintiff got the mattress and base, the electric plug which was plugged into the wall which controlled the base and vibrator started to smoke.

4. It was at this time the Plaintiff contacted his electrician because the prongs from the cord has burned into the outlet.

5. Plaintiff contacted Kim who sold the Plaintiff's friends the mattress for the Plaintiff as a gift. Kim informed the Plaintiff that she would talk to her boss about the base and that the boss would know what to do. Approximately a week later, Plaintiff received a call from Kim's boss who told the Plaintiff she would refund the Plaintiff's money for the base which she did.

6. The Plaintiff reached out personally to Defendant Eck and asked him to refund all the money for the Mattress because, the Mattress had bugs in it and the Plaintiff had to remove the Mattress from the bedroom to the garage so that the Mattress could be fumigated.

---

[1]    These allegations are accepted as true, with all reasonable inferences drawn in Rose's favor.  *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018).  Additionally, courts have an obligation to construe the filings of *pro se* litigants liberally.  *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).  However, neither conclusory assertions nor legal contentions need be considered by the Court in determining the viability of Rose's claims.  *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

7. After 2 weeks of the mattress sitting in the garage and being sprayed 2 or 3 times a week, the Plaintiff then moved the mattress back to his bedroom. It was at this time the Plaintiff noticed that the mattress was a defective mattress because, the mattress did not lay flat; it was always a dip in the middle of the mattress which brought excruciating pain to the Plaintiff's back.

8. There was always a dip in the bed that never went away. Plaintiff will attach a picture of how the mattress is designed. One thing is a fact the mattress is not an extra firm mattress.

9. All the Plaintiff wanted to do is get his money back and go to a legitimate mattress place and get himself a good mattress and get what he paid for. He asked the President, Defendant Eck, to return his funds. Since the Defendant refused to return the Plaintiff's funds, let us bring the mattress to a Jury and let the Jury see the mattress and how defective it is.

10. This matter should have been settled over a month ago . . . .

11. The mattress does not lie and, the mattress is not fit for human use. Plaintiff wants the Court and the Jury to see that the mattress has a bunch of ripples and, no human being should be forced to lay on a mattress that causes severe injury to the back.

12. Defendants could have resolved this matter by just giving Plaintiff his money back. Now, the Plaintiff wants double his money back for all the aggravation that Defendants put the Plaintiff through in the name of greed.

\* \* \*

14. If Defendants do not want to pay the Plaintiff for his injuries and suffering then this matter must be set for Trial so that a Jury can see the deliberate, willful and intentional negligence of the Defendants.

15. Plaintiff cannot sleep on the bed because, it causes Plaintiff's back to be sore and there are too many lumps on the mattress. The mattress is causing Plaintiff severe injury. Whereas, the Plaintiff, when he gets out of bed, he can barely walk because, the mattress acts like it has a mind of its own on how to destroy those who lay on it.

16. The Plaintiff asked the CEO to resolve this matter, they gave the Plaintiff $600 or $700 for the base but, fell short when it came time to refunding the money for the mattress. The CEO was given every opportunity to correct his illegal business practices.

\* \* \*

18. Plaintiff will extend this Complaint in the event the CEO does not want to give him all his money back.

Wherefore, Plaintiff prays that this Honorable Court will enter Judgment for the Plaintiff and against Defendant John Eck . . . in excess of $100,000 nominal and $100,000 punitive damages for Unfair and Unlawful Business Practices and against Defendant Mattress Firm in excess of $100,000 nominal and $100,000 punitive damages for Unfair and Unlawful Business Practices.

Rose's Complaint ("Compl."), ECF No. 1.

Rose does not state what causes of action he is attempting to pursue based on these allegations.

### B.    Procedural Background

Rose commenced this action in the Lehigh County Court of Common Pleas on or about November 6, 2020.  *See* ECF No. 1.  Defendants removed the case to this Court on December 16, 2020.  *See id.*  They filed their motion to dismiss shortly thereafter on December 23, 2020. *See* ECF No. 6.

A letter from Rose to the Court was docketed on January 11, 2021, in which Rose expresses his desire to settle this case and the efforts he has made towards that purpose.  *See* ECF No. 8.  Rose next filed a motion, docketed on January 22, 2021, to strike Defendants' motion to dismiss for their alleged failure to conference the matter with him prior to filing the motion.  *See* ECF No. 11.  On January 26, 2021, the Court issued an Order directing Rose to respond to the pending motion to dismiss.  *See* ECF No. 10.  That same day, two filings of Rose's were docketed:  a "letter" from Rose apparently directed to opposing counsel, expressing Rose's displeasure with Defendants' failure to settle this case on terms Rose finds appropriate and stating what he believes to be fair settlement terms, *see* ECF No. 9; as well as Rose's response to Defendants' motion to dismiss, *see* ECF No. 12.  The next day, January 27, 2021, the Court

issued an Order formally denying Rose's motion to strike Defendants' motion to dismiss.  *See* ECF No. 13.

Another letter from Rose to opposing counsel regarding settlement was docketed on February 8, 2021.  *See* ECF No. 15.  Also docketed on February 8, 2021, was a filing by Rose titled "Motion to Clarify the Record with Undisputed Facts / Constitutional Notation Pursuant to the 1st Amendment."  *See* ECF No. 16.  This "motion"—which contained seemingly random legal citations, reassertions of Rose's allegations against Defendants, references to settlement efforts, and *ad hominem* attacks—was denied in an Order issued on February 10, 2021.  *See* ECF No. 17.

On February 16, 2021, an additional motion by Rose was docketed, this one titled "Motion to Withdraw Any Frivolous Argument or Contentions that this Honorable Court has Already Formed an Opinion About.  This Motion Supersedes any and all Motions Previously Filed by the Plaintiff in these Pleadings."  *See* ECF No. 18.  On February 22, 2021, another motion by Rose was docketed, this one titled "Motion to be Treated like a Human Being And Motion to Forgive Plaintiff for Being an American with a Handicap."  *See* ECF No. 19.  These two most recent "motions"—the purposes of which are not at all clear—remain pending.

## III.   LEGAL STANDARDS & APPLICABLE LAW

Defendants move for dismissal on three grounds:  (1) Rose's failure to comply with the relevant rules regarding sufficient service of process; (2) an absence of personal jurisdiction over Defendant John Eck; and (3) Rose's failure to state any viable claim upon which relief can be granted.  Because, as explained below, the Court finds that dismissal is appropriate on grounds

(2) and (3), the Court does not address Defendants' arguments regarding service of process, as that issue is moot.[2]

### A.      Legal Standard:  Motions Under Federal Rule of Civil Procedure 12(b)(2)

A motion to dismiss a pleading for lack of personal jurisdiction is properly raised under Federal Rule of Civil Procedure 12(b)(2).  A Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603 (3d Cir. 1990).  Where a defendant challenges the existence of personal jurisdiction, the plaintiff bears the burden of making a *prima facie* showing that jurisdiction exists.  *Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 550 (E.D. Pa. 2018) (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)); *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005).  "The plaintiff meets this burden by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction.'" *Hepp v. Facebook, Inc.*, No. CV 19-4034, 2020 WL 4437036, at *3 (E.D. Pa. Aug. 3, 2020) (quoting *Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987)).  A plaintiff may not "rely on the bare pleadings alone in order to withstand a defendant's . . . motion to dismiss for lack of personal jurisdiction." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). "Instead, the 'plaintiff must respond with actual proofs, not mere allegations." *Hepp*, 2020 WL 4437036, at *3 (quoting *Time Share Vacation Club*, 735 F.2d at 66 n.9).

---

[2]      *See, e.g., Roark v. Buckworth*, No. CV 20-1150, 2020 WL 6743018, at *5 (D. Del. Nov. 17, 2020) (finding as moot a motion for dismissal under Rule 12(b)(5) where plaintiff failed to state a viable claim and defendant's motion to dismiss under Rule 12(b)(6) was granted).

In responding to a challenge to personal jurisdiction, "plaintiff[s] [are] entitled to have [their] allegations taken as true and all factual disputes drawn in [their] favor." *Miller Yacht Sales, Inc., v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Where a court reviewing a Rule 12(b)(2) motion declines to hold an evidentiary hearing, "the Court is bound only to consider Plaintiff's Complaint and supporting evidence." *Laverty v. Cox Enterprises, Inc.*, No. CV18-1323, 2019 WL 351905, at *1 (D.N.J. Jan. 29, 2019) (citing *O'Connor*, 496 F.3d at 316). That is to say, where a district court declines to "hold an evidentiary hearing . . . plaintiff[s] need only establish a prima facie case of personal jurisdiction." *O'Connor*, 496 F.3d at 316 (quoting *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004)).

## B.    Legal Principles:  Personal Jurisdiction

Federal Rule of Civil Procedure 4(k) provides that personal jurisdiction in a United States District Court is established in accordance with the law of the state in which the District Court sits. *See* FED. R. CIV. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . ."); *see also O'Connor*, 496 F.3d at 316. This Court therefore looks to the law of Pennsylvania, and Pennsylvania's long-arm statute in particular, to determine whether Rose can establish the existence of personal jurisdiction over John Eck.

Pennsylvania's long-arm statute provides that "the jurisdiction of the tribunals of this Commonwealth shall extend . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 PA. CONS. STAT. § 5322(b); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) ("The Pennsylvania [long-arm]

statute permits the courts of that state to exercise personal jurisdiction over nonresident

defendants to the constitutional limits of the due process clause of the fourteenth amendment.").

"Accordingly, in determining whether personal jurisdiction exists," this Court must ask

"whether, under the Due Process Clause [of the Fourteenth Amendment], the defendant has

'certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not

offend traditional notions of fair play and substantial justice.'" *O'Connor*, 496 F.3d at 316-17

(quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

"These basic due process principles are reflected in the two recognized types of personal

jurisdiction"—specific jurisdiction and general jurisdiction. *Marten v. Godwin*, 499 F.3d 290,

296 (3d Cir. 2007). For Rose's suit to proceed against John Eck, this Court must be able to

exercise one of these forms of personal jurisdiction over him.

A court may exercise *specific* jurisdiction where a "plaintiff's claim arise[s] from the

defendant's contacts with the forum in which the court sits." *Hepp*, 2020 WL 4437036, at *3.

 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984));

*Marten*, 499 F.3d at 296 ("Specific jurisdiction exists when the claim arises from or relates to

conduct purposely directed at the forum state."). The Third Circuit has outlined a three-part

inquiry to determine whether specific jurisdiction exists:

> First, the defendant must have "'purposefully directed' his activities" at the forum.
> *Burger King Corp. v. Rudzewicz*, 471 U.S. 472 (1985) (quoting *Keeton v. Hustler
> Magazine, Inc.,* 465 U.S. 770, 774 (1984)). Second, the plaintiff's claim must "arise
> out of or relate to" at least one of those specific activities. *Helicopteros,* 466 U.S.
> at 414. Third, courts may consider additional factors to ensure that the assertion of
> jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger
> King,* 471 U.S. at 476 (quoting *Int'l Shoe,* 326 U.S. at 320).

*Marten*, 499 F.3d at 296. To satisfy the first element of the inquiry, "[t]here must be a deliberate

targeting of the forum . . . . Moreover, the defendant must have purposefully avail[ed] itself of

the privilege of conducting activities within the forum." *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 463-64 (E.D. Pa. 2019) (internal quotation marks and citations omitted).  With respect to the second element of the inquiry, the "analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests"—that is, the relatedness between the benefits and obligations a forum state's law extends to an out-of-state defendant as a result of conduct directed at the forum state.  *Id.* at 464 (quoting *O'Connor*, 496 F.3d at 323).  When the first two elements of the inquiry are satisfied, the existence of minimum contacts is established, making "jurisdiction presumptively constitutional."  *O'Connor*, 496 F.3d at 324.  In this circumstance, exercising jurisdiction comports with "traditional notions of fair play and substantial justice," and a "defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *Id*. (quoting *Burger King,* 471 U.S. at 477).

For *general* jurisdiction to exist, the Court's inquiry is whether a defendant's "affiliations with the [forum] State are so continuous and systemic as to render [him] essentially at home in the forum State."  *Lutz*, 571 U.S. at 137 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Tann v. U.S. Steel Corp.*, No. CIV.A. 15-3, 2015 WL 3609913, at *4 (W.D. Pa. June 8, 2015) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  General jurisdiction may be found to exist whether or not a defendant's contacts with a forum state are related to the plaintiff's cause of action.[3]  *Metcalfe v. Renaissance Marine, Inc.*, 556 F.3d 324, 334 (3d Cir. 2009).

---

[3]      Although not germane to the inquiry with respect to Eck, a corporation's the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction'" over it.  *Daimler AG*, 571 U.S. at 137 (quoting Lea Brilmayer, Jennifer Haverkamp, Buck Logan, *A General Look at General Jurisdiction*, 66 Tex. L. Rev. 721, 735 (1988)).  "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as

**C.      Legal Standard:  Motions Under Federal Rule of Civil Procedure 12(b)(6)**

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the appropriate

pleading standard in civil cases and set forth the approach to be used when deciding motions to

dismiss brought under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

After identifying a pleaded claim's necessary elements,[4] district courts are to "identify [ ]

pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth."  *Id*. at 679; *see id*. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007))); *Thourot v. Monroe Career & Tech. Inst*., No. CV 3:14-1779, 2016

WL 6082238, at *2 (M.D. Pa. Oct. 17, 2016) (explaining that "[a] formulaic recitation of the

elements of a cause of action" alone will not survive a motion to dismiss).  Although "legal

conclusions can provide the framework of a complaint, they must be supported by factual

allegations."  *Iqbal*, 556 U.S. at 679.

Next, if a complaint contains "well-pleaded factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content

---

easily ascertainable."  *Id*.  Although the Supreme Court has "not foreclose[d] the possibility that
in an exceptional case, a corporation's operations in a forum other than its formal place of
incorporation or principal place of business may be so substantial and of such a nature as to
render the corporation at home in that State," *id*. at 139 n.19, the Third Circuit has observed that
to establish general jurisdiction in another state under such exceptional circumstances is
"incredibly difficult," *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016).

[4]      The Third Circuit has identified this approach as a three-step process, with identification
of a claim's necessary elements as the first step.  *See Connelly v. Lane Const. Corp.*, 809 F.3d
780, 787 n.4 (3d Cir. 2016) ("Although *Ashcroft v. Iqbal* described the process as a 'two-pronged
approach,' 556 U.S. 662, 679 (2009), the Supreme Court noted the elements of the pertinent
claim before proceeding with that approach, *id*. at 675-79.  Thus, we have described the process
as a three-step approach.") (citation omitted).

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.  This standard, commonly referred to as the "plausibility standard," "is not comparable to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556-57).  It is only where the "[f]actual allegations . . . raise a right to relief above the speculative level" that the plaintiff has stated a plausible claim.[5]  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

Putting these steps together, the Court's task in deciding a motion to dismiss for failure to state a claim is to determine the following:  whether, based upon the facts as alleged, which are taken as true, and disregarding legal contentions and conclusory assertions, the complaint states a claim for relief that is plausible on its face in light of the claim's necessary elements.  *Iqbal*, 556 U.S. at 679; *Ashford v. Francisco*, No. 1:19-CV-1365, 2019 WL 4318818, at *2 (M.D. Pa. Sept. 12, 2019) ("To avoid dismissal under Rule 12(b)(6), a civil complaint must set out sufficient factual matter to show that its claims are facially plausible."); *see Connelly*, 809 F.3d at 787.

In adjudicating a Rule 12(b)(6) motion, the scope of what a court may consider is necessarily constrained:  a court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *United States v. Gertsman*, No. 15 8215, 2016 WL 4154916, at *3 (D.N.J. Aug. 4, 2016) (quoting *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013)).  A court adjudicating a Rule 12(b)(6)

---

[5]      As the Supreme Court has observed, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

motion may also take judicial notice of certain undisputed facts.  *See Devon Drive Lionville, LP v. Parke Bancorp, Inc*., No. CV 15-3435, 2017 WL 5668053, at *9 (E.D. Pa. Nov. 27, 2017).

### D.      Legal Standard:  Construing the Filings of *Pro se* Litigants

Courts have an obligation to construe the filings of *pro se* litigants liberally.  *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).  This extends to the construction of *pro se* pleadings. *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."), *as amended*, (Sept. 19, 2011); *see Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013).  Although *pro se* litigants are entitled to have the substance of their filings liberally construed, "[a]the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

## IV.     ANALYSIS

### A.      The Court Lacks Personal Jurisdiction Over John Eck

It cannot be disputed that John Eck, who is the CEO of Mattress Firm, Inc., resides in, is a citizen of, and is domiciled in the state of Texas—where Mattress Firm, Inc. is headquartered.[6] *See* Notice of Removal, ECF No. 1 ¶¶ 9(b)-(c); Plaintiff's Memorandum in Opposition ("Pl.'s Opp'n."), ECF No. 12, at 6; *see also Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there.").  Consequently, the Court does not possess *general* personal jurisdiction over him.  *See Goodyear*, 564 U.S. at 924 ("For an

---

[6]      *See* https://www.mattressfirm.com/customer-service.html ("MattressFirm.com is wholly owned and operated by Mattress Firm, Inc., 10201 S. Main St. Houston, TX 77025 - Copyright 2021 by MattressFirm.com, a Mattress Firm, Inc. Company All rights reserved.")

individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . .").

Nor has Rose—whose burden it is to establish a *prima facie* case of personal jurisdiction once that jurisdiction has been challenged—put forward any facts to suggest that Mr. Eck "purposefully direct[ed] his activities" at Pennsylvania, let alone that the claims in this lawsuit "arise out of or relate to" any such activities. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007); *see Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 464 (E.D. Pa. 2019); *Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 550 (E.D. Pa. 2018). Indeed, Rose pleads that Eck was *inactive* in failing to respond to his written correspondence. *See, e.g.*, Compl. ¶ 9. Eck therefore could not have directed any affirmative conduct at Pennsylvania. Without any allegation whatsoever regarding any personal conduct of Eck directed at Pennsylvania, and with the opposite being apparent from Rose's Complaint, this Court lacks *specific* personal jurisdiction over Eck.[7] To find otherwise would conflict with common sense and basic concerns of due process. *Cf. Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 504 (D. Del. 2003) ("[T]he only activity alleged in the Complaint that is specific to [the forum], is the incorporation of IRI and IRD. Absent actual conduct in [the forum], Defendant['s ] position as President and CEO of IRI and IRD would be insufficient to establish jurisdiction.").

Even if Rose could make a showing that his claims arose out of *some* conduct of Eck's that was directed at Pennsylvania in his corporate capacity, unless the conduct was tortious the

---

[7]     While Rose's Complaint alleges inaction on the part of Eck, Rose's response to Defendants' motion appears to argue, without any support, that specific jurisdiction is present because Eck, as the CEO of Mattress Firm, personally directed a company-wide effort to harm him. *See, e.g.*, Pl.'s Opp'n. at 8 ("It is believed Defendant Eck after receiving Plaintiff's letters directed Mattress Firm's Agents and Employees to deny Plaintiff's claims under the warranties for the base and the mattress. Opposing counsel appears to be trying to fix this Case for the wealthy Defendants.").

simple fact that Eck is CEO of Mattress Firm, Inc., would not establish specific personal jurisdiction over him.  *See Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc.*, 885 F. Supp. 2d 767, 783 (E.D. Pa. 2012) ("Generally, '[i]ndividuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the court of that state for those acts.'" (quoting *Elbeco Inc. v. Estrella de Plato, Corp.,* 989 F.Supp. 669, 676 (E.D. Pa. 1997))).

For the above reasons, this Court is unable to exercise personal jurisdiction over John Eck.  Consequently, any claim(s) Rose is attempting to assert against Eck necessarily cannot proceed, and Defendants' motion to dismiss as to Eck is granted.

### B.    Rose Fails to State Any Viable Claim as to Mattress Firm, Inc.

Turning to Defendants' third argument for dismissal—Rose's failure to state any viable claim against Mattress Firm, Inc. upon which relief can be granted—Defendants begin by identifying several causes of action which Rose could potentially be attempting to assert:  breach of contract; unfair and unlawful business practices; negligence; and products liability.  The Court agrees with Defendants that these are the entirety of the claims a liberal reading of Rose's Complaint indicates he may be attempting to assert.  The Court also agrees with Defendants that Rose fails to make out any of these causes of action.  As  explained below, Rose is necessarily unable to state claims for breach of contract, unfair business practices, and negligence, because he did not purchase the allegedly defective mattress that forms the basis for his allegations; rather "[Rose's] friends purchased [the] mattress and [the] base from Mattress Firm as a gift to [Rose]."  Compl. ¶ 1.  As also explained below, Rose is unable to state a claim for products liability because his allegations are patently insufficient to support such a claim.

### 1.     *Breach of contract*

To state a claim for breach of contract, a plaintiff's allegations must plausibly support the following:  "(1) 'the existence of a contract, including its essential terms'; (2) 'a breach of a duty imposed by the contract'; and (3) 'resultant damages.'"  *Fortunato v. CGA Law Firm*, No. 1:17-CV-00201, 2018 WL 4635963, at *3 (M.D. Pa. Sept. 27, 2018) (quoting *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. Ct. 2002)).  A plaintiff must generally have privity of contract with a defendant, meaning that a plaintiff must have been an intended beneficiary of any contract with that defendant.  *See Illinois Union Ins. Co. v. Hydro Int'l, PLC*, 929 F. Supp. 2d 365, 373 (M.D. Pa. 2013) (quoting *Scarpitti v. Weborg*, 530 Pa. 366, 372-73 (Pa. 1992)).

Even if the purchase of the at-issue mattress here could form an enforceable contract between the purchaser and Mattress Firm, Inc., Rose was not the purchaser.  He was therefore not the intended beneficiary of any such contract, and there is no privity of contract between Rose and Mattress Firm, Inc.  *See Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 486-87 (E.D. Pa. 2016) ("[E]ven if the product's label could constitute an agreement with clear and definite terms, Plaintiff's breach of contract claim would fail because there is no privity between Plaintiff and Defendant. . . . Plaintiff has not identified any contractual connection or relationship between the parties. Plaintiff does not allege that he purchased the allegedly mislabeled products directly from Defendant.").  "Furthermore, no exception to the privity requirement applies," as Rose "does not allege the existence of an agency relationship or third-party beneficiary status." *Id*. at 487 (citing *Robbins Motor Transp., Inc. v. Translink, Inc.*, No. 07–150, 2009 WL 803711, at *7-8 (E.D.Pa. Mar. 26, 2009)).   Accordingly, Rose is unable to state a claim for breach of any contract that was formed as a result of the purchase of the mattress.

### 2.   *Unfair and unlawful business practices*

Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL")

"seeks to prevent unfair methods of competition and unfair or deceptive acts or practices in the

conduct of any trade or commerce."  *Bennett v. A.T. Masterpiece Homes*, 40 A.3d 145, 151 (Pa.

Super. Ct. 2012).  The UTPCPL creates a private right of action for "[a]ny person who purchases

or leases goods or services primarily for personal, family or household purposes and thereby

suffers any ascertainable loss of money or property, real or personal, as a result of the use or

employment by any person of a method, act or practice declared unlawful by of this act."  73 PA.

CONS. STAT. § 201–9.2.

Here, because the at-issue mattress was purchased for Rose by his friends as a gift, Rose

is not a "person who purchase[d] or lease[d] goods or services" within the meaning of the

UTPCPL, and he does not have standing to assert a claim under the statute.  *Gemini Physical*

*Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 65 (3d Cir. 1994) ("The

CPL contemplates as the protected class only those who purchase goods or services, not those

who may receive a benefit from the purchase. . . . Although Gemini may have been indirectly

injured, it is not a purchaser or consumer of goods or services under the CPL and therefore has

no private right of action under the statute.") (collecting cases); *see Lauer v. McKean Corp*, 2 Pa.

D. & C.4th 394, 397 (Com. Pl. 1989) ("[I]n drafting provisions permitting private actions, one of

the obvious questions that the legislature would have addressed is whether the consumer who did

not complete the transaction would be entitled to bring a private action. The language selected by

the legislature provides a clear answer.").  Therefore, to the extent Rose is attempting to assert a

claim under the UTPCPL, this claim necessarily fails.

### 3.     *Negligence*

"The 'elements of negligence are: a duty to conform to a certain standard for the protection of others against unreasonable risks; the defendant's failure to conform to that standard; a causal connection between the conduct and the resulting injury; and actual loss or damage to the plaintiff.'"  *Jones v. Plumer*, 226 A.3d 1037, 1039 (Pa. Super. Ct. 2020) (quoting *Brewington for Brewington v. City of Philadelphia*, 199 A.3d 348, 355 (Pa. 2018)).  Although Rose fails to plausibly plead the existence of any duty owed to him by Mattress Firm, Inc. (let alone that any such duty was breached), and while this omission would be sufficient on its own to doom a negligence claim, because Rose did not purchase the at-issue mattress, it is highly implausible that  any such duty could or would exist.  As a practical matter, it is unclear how Mattress Firm could make Rose whole were he able to state and then succeed on a negligence claim:  While Rose contends that "[a]ll [he] wanted to do is get his money back," Compl. ¶ 9, "his money" was not used to purchase the mattress in the first instance.[8]  For these several reasons, any claim for negligence Rose may be attempting to assert necessarily fails.

### 4.     *Products liability*

"The Restatement (Second) of Torts § 402A, adopted as the law of this Commonwealth . . . governs all claims of products liability and allows recovery where a product in 'a defective condition unreasonably dangerous to the consumer or user' causes harm to the plaintiff."  *French v. Commonwealth Assocs., Inc.*, 980 A.2d 623, 632 (Pa. Super Ct. 2009).  The elements of a strict liability claim for a defective product are the following:  that "'the product was defective,

---

[8]     To the extent Rose is seeking compensation for physical injuries suffered as a result of sleeping on the mattress, his allegations in support of such injuries are fatally deficient.  *See, e.g.*, Compl. ¶ 15 ("Plaintiff cannot sleep on the bed because, it causes Plaintiff's back to be sore and there are too many lumps on the mattress. The mattress is causing Plaintiff severe injury.").

the defect existed when it left the defendant's hands, and the defect caused the harm.' A product

may be defective based on a manufacturing defect, design defect, or failure-to-warn defect."

*Igwe v. Skaggs*, 258 F. Supp. 3d 596, 609 (W.D. Pa. 2017) (quoting *High v. Pennsy Supply, Inc.*,

154 A.3d 341, 345-46 (Pa. Super. Ct. 2017)).

Here, Rose's allegations are wholly insufficient to state a claim for products liability

under any theory.  Simply put, there is no way to read Rose's allegations—*i.e.*, that the mattress

was "a defective mattress because[ ] the mattress did not lay flat; it was always a dip in the

middle of the mattress which brought excruciating pain to the Plaintiff's back," Compl. ¶ 7, as

well as that "there are too many lumps on the mattress," and that "the mattress acts like it has a

mind of its own on how to destroy those who lay on it," *id.* ¶ 15—as capable of plausibly

supporting an inference that the mattress posed or created an "*unreasonably* dangerous"

condition.[9]  *See French*, 980 A.2d at 632 ("The threshold inquiry in all products liability cases is

whether there is a defect which rendered the product unreasonably dangerous." (quoting *Weiner*

*v. American Honda Motor Co., Inc.*, 718 A.2d 305, 307-08 (Pa. Super. 1998))); *see, e.g.*,

*Warnick v. NMC-Wollard, Inc.*, 512 F. Supp. 2d 318, 325 (W.D. Pa. 2007).  Consequently, Rose

is unable to state a claim for strict products liability, whether it be under a theory of

manufacturing defect, design defect, or failure-to-warn.

### C.   None of the Deficiencies in Rose's Claims can be Remedied by Amendment

"[A] plaintiff will [generally] be given the opportunity to amend h[is] complaint when

there is an asserted defense of failure to state a claim."  *Kanter v. Barella*, 489 F.3d 170, 181 (3d

Cir. 2007); *see also* FED. R. CIV. P. 15(a)(2) (providing that leave to amend pleadings, when not

---

[9]     Nor is Rose's single reference to the mattress having "bugs" in it, *see id.* ¶ 6—which alleged condition does not even appear to be the basis for his claim that the mattress was "defective"—capable of supporting a strict products liability claim.

as of right, should be "freely give[n] when justice so requires").  Yet this general rule is subject to several exceptions:  a district court may deny leave to amend a complaint where (1) there has been undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.  *See Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 224 (E.D. Pa. 2012).

In the Court's view, there is no way that permitting Rose the opportunity to amend his Complaint to allege additional facts would remedy the many deficiencies with his claims as noted above.  To the contrary, his existing allegations make clear that (1) this Court cannot exercise personal jurisdiction over John Eck, and (2) to the extent Rose is attempting to assert claims for breach of contract, unfair and unlawful business practices, negligence, or products liability, these claims fail as a matter of law.  Rose's claims are therefore dismissed with prejudice as futile.

### D.     Several Allegations are Stricken from Rose's Complaint

Finally, the Court notes that Defendants seek to have several impertinent, immaterial, and scandalous passages of Rose's Complaint stricken under Federal Rule of Civil Procedure 12(f).  Specifically, Defendants move to strike the reference to John Eck as a "thief" in the caption of Rose's Complaint; the references in paragraph 10 of the Complaint to John Eck as "President of this slip-shod business," that Eck "rip[s] people off," and that Eck has "an overwhelming disregard for the consumers' rights;" as well as similar language in paragraph 13 of the Complaint.[10]

---

[10]     The Court has avoided reproduction of and reference to these passages in the instant Opinion in light of their baseless and scandalous nature.

Federal Rule of Civil Procedure 12(f) authorizes courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Conklin v. Anthou*, No. 1:10-CV-02501, 2011 WL 1303299, at *1 (M.D. Pa. Apr. 5, 2011). "Scandalous pleading for purposes of Rule 12(f) must reflect cruelly upon the defendant's moral character, use repulsive language or detract from the dignity of the court." *Carone v. Whalen*, 121 F.R.D. 231, 233 (M.D. Pa. 1988). "However, 'even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party.'" *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 94 (D.N.J. 2014) (quoting *F.T.C. v. Hope Now Modifications, LLC*, No. CIV. 09-1204, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011)).

The Court finds that the instant case presents the rare circumstance where striking portions of a pleading under Rule 12(f) is appropriate. In particular, after reviewing the several identified assertions, " the Court finds that the[se] allegations . . . amount to [ ] scandalous" assertions, as they "'detract[ ] from the dignity of the court' and 'improperly cast[ ] a derogatory light' on" Defendants. *Conklin*, 2011 WL 1303299, at *1 (quoting *Carone,* 121 F.R.D. at 232). The Court additionally finds that as these assertions are lodged against Defendants, and John Eck in particular, without any basis in fact, failure to strike them from Rose's Complaint will prejudice Defendants. For these reasons, Defendants' motion to strike from Rose's Complaint the several identified passages is granted.

## V.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted, and Rose's claims are dismissed with prejudice as against both Mattress Firm, Inc. and John Eck. Defendant's motion to strike the several identified passages from Rose's Complaint is also granted.

A separate Order follows this Opinion.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge